waived, there appears to be no good reason why a deficiency of 11 might not be; and it is difficult to say why, upon the same principle, the entire panel might not be dispensed with, and the trial committed to the court alone.

Upon the authority of this decision of the Court of Appeals, I am clearly of the opinion that a certificate of reasonable doubt should be allowed in this case. Motion granted.

o

ERNST et al. v. HOLZNER.

(Supreme Court, Appellate Term. June 29, 1911.)

1. LANDLORD AND TENANT (§ 90*)—HOLDING OVER AFTER TERM.
   Where a tenant remains in possession of the premises after the expiration of the term, the landlord may elect to treat him as holding over on the terms of the prior lease.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 284–289; Dec. Dig. § 90.*]

2. LANDLORD AND TENANT (§ 90*)—HOLDING OVER.
   A lessee for a term expiring February 1st began, with the knowledge of the lessor, during January to remove his merchandise from the premises, and by January 30th 90 per cent. in bulk and 95 per cent. in value had been removed. On that day the lessee left the city with instructions to remove the balance by February 1st. He returned four days later, and some merchandise then remained on the premises. The keys were not delivered to the landlord, but he could without difficulty enter the premises. *Held* not to show a holding over after the expiration of the term.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 285; Dec. Dig. § 90.*]

3. LANDLORD AND TENANT (§ 233*)—HOLDING OVER—LANDLORD'S OPTION.
   Unless the undisputed evidence in an action for rent clearly shows an option by a landlord to treat a tenant as holding over under the terms of the original lease, the question whether the landlord exercised his option or took possession in his own right is one of fact.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 941, 942; Dec. Dig. § 233.*]

4. LANDLORD AND TENANT (§ 90*)—HOLDING OVER—LANDLORD'S OPTION—EVIDENCE.
   A lease expired on February 1st. The landlord on the 1st or 2d day of February demanded the rent because rent was due on the 1st of the month. On February 6th he re-entered the premises. *Held* not to show an exercise by the landlord of his option to hold the tenant as holding over.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 289; Dec. Dig. § 90.*]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Moritz L. Ernst and another against David Holzner. From a judgment for defendant, plaintiffs appeal. Affirmed.

The following is the opinion of Mr. Justice Spiegelberg in the court below:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

By an agreement in writing the plaintiffs leased to the defendant the seventh loft in the building known as No. 11 West Twentieth street in the borough of Manhattan for a term of two years from February 1, 1909. Upon the expiration of the term, the defendant did not renew the lease; but the plaintiffs claim that he held over beyond the 1st day of February, 1911, and in this action seek to recover the rent for that month.

[1] It is well settled that, where a tenant remains in possession of leased premises after the expiration of the stipulated term, the law implies an agreement on his part to hold over upon the terms of the prior lease. The option to treat the hold over as a tenant for another year lies with the landlord. Schuyler v. Smith, 51 N. Y. 309, 10 Am. Rep. 609; Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94, 28 Am. St. Rep. 636. The defendant does not challenge this principle, but contends that the facts in this case do not warrant a holding over by the defendant after February 1, 1911. After a thorough examination of the testimony and a careful consideration of the very able and elaborate briefs submitted by both sides, I have adopted the view urged by the defendant. The learned counsel for the plaintiff very skillfully argues that, giving full credence to the witnesses of the defendant, a continuing possession by the defendant after February 1, 1911, has been proved, and that such possession is made conclusive through the evidence adduced on behalf of the plaintiff.

I shall briefly review the evidence in this case. It appears that some time in November, 1910, the parties to this action had an interview relating to the renewal of the then existing lease. Whether at that time the defendant stated that he would move, or that he was undecided what to do, is not necessary to decide. At all events, during the month of January, 1911, the defendant, with the knowledge of the plaintiffs, was engaged in the process of moving his merchandise from the loft in question, and by January 30, 1911, 90 per cent. thereof in bulk and 95 per cent. in value had been taken out. On that day the defendant left the city and did not return until February 4th. Before his departure he gave instructions that everything should be taken from the loft by February 1, 1911. No testimony was given to show how much of the remaining 10 per cent. of the goods was removed on January 31st and February 1st; but it is admitted that merchandise remained behind after February 1st. The conflict between the parties relates to the time of the final removal and the quantity of the goods. The plaintiffs also lay stress upon the fact that no keys were given up by the defendant. There was a door leading into the loft from the stairway, which, however, was permanently locked and not in use, and, as the door leading from the freight elevator was barred from the inside, the only entrance to the loft was from the passenger elevator. This door was secured on the outside by a spring lock which was originally bought by the defendant (S. M. p. 62), the plaintiffs having furnished merely keys to the front door of the building and to the one which was permanently barred (S. M. p. 61).

The principal witnesses were William Ambrose and Joseph R. Wade for the plaintiff, and Abraham B. Cohen for the defendant. Ambrose was in charge of the freight elevator, and Wade ran the passenger elevator. Cohen is an employé of the defendant and superintended the removal of the goods. It is conceded that Cohen entered the loft on a few occasions after February 1, 1911. He testified that on February 2d two cases, fully packed, were taken from the premises (S. M. p. 74), and that thereafter nothing remained except worthless furniture and rubbish which were abandoned by the defendant. It may be that Cohen's testimony was somewhat colored by his desire to aid his employer; but, on the other hand, the palpable exaggerations and apparent contradictions by Ambrose, and the confused testimony of Wade, induce me to credit Cohen's testimony in preference to that of the others. Ambrose testified that a very large amount of goods was on the premises until February 6, 1911, and that up to and including that date not alone were goods being constantly removed, but that they were being packed in cases by men evidently sent there by the defendant for that purpose. Mr. Marx, who is, with the plaintiffs, a co-owner of the building in question, testified, in flat contradiction of Ambrose, that he went upon the premises the morning of February 6th and found the loft empty (S. M. p. 41). It is true that the

defendant testified that some cases in excess of the number testified to by Cohen were received in his new place of business on February 4th; but I do not think that too much should be made of this discrepancy with Cohen's testimony for the reason that Mr. Holzner only returned to the city on that date and may have 'been mistaken. It may not be amiss to state in this connection that the evidence given by the parties interested was marked by extraordinary sincerity, and no attempt was made by them to profit by the testimony given by their respective subordinates, which in several instances was more favorable than their own.

[2] It is urged by the learned counsel for the plaintiffs with great emphasis that access to the loft was denied to the plaintiffs until February 6, 1911. I do not think that the facts warrant such an assumption. Mr. Ernst, one of the plaintiffs, testified that on the 3d of February he attempted to enter the loft and tried to get in through the passenger elevator door (S. M. pp. 45, 51). He "supposed there was a lock" on the door, but fails to give any accurate description of the manner in which the lock was attached to the door; nor does it appear that he made an independent investigation, relying evidently upon information received from Wade. On February 6th he testified that the "keys were there" (S. M. p. 52). On that same day Mr. Marx found the loft open (S. M. p. 41). Cohen testified that on February 1st he did not snap the spring lock, but placed the key, according to his usual custom, on a nail on the door (S. M. pp. 68, 69), and that upon his succeeding visits to the loft the lock was on the door but not locked. I have no doubt that his version accords with the truth. Notwithstanding the testimony of Mr. Ernst and Mr. Marx that the keys were on hand on February 6th and the loft was open, Ambrose does not know how the loft was finally opened. On the other hand, at one time Ambrose testified that he never tried to open the passenger elevator door before February 6th (S. M. p. 9), and then again that he attempted to do so twice on February 4th (S. M. p. 15). Wade's testimony concerning the lock on the passenger elevator door was very confusing. His statement that the door was locked was elicited only after considerable prodding, and even then he was unable to give exact dates (S. M. pp. 28, 29, 34).

The contention that the plaintiffs were kept out of possession after February 1, 1911, is without merit. Even according to the testimony of Ambrose and Wade they always had access to the loft whenever Cohen appeared, and, although Ambrose claimed that he demanded the keys, this statement is not entitled to credit. It would have been an easy thing to enter upon the premises if there had been a desire to do so. The only attempt to do it which requires some consideration is that of Mr. Ernst on February 3d; but I believe that he would not have encountered any great difficulties in achieving his purpose if he had received correct information from Ambrose or Wade or had personally examined the lock on the passenger elevator door.

The facts accepted by the court do not show a wrongful holding over by the defendant; and, although the principle that the landlord is entitled to treat the tenant who holds over as a lessee for another year is firmly established, the rule is not an arbitrary one even where the holding over is admitted. Herter v. Mullen, 159 N. Y. 38, 53 N. E. 700, 44 L. R. A. 703, 70 Am. St. Rep. 517; Haynes v. Aldrich, supra. Where, as in this case, the holding over is predicated upon the fact that some property is left on the premises, it would defeat the ends of justice to apply the doctrine in all its rigidity. In Vosburgh v. Corn, 23 App. Div. 147, 48 N. Y. Supp. 598, the court said: "We do not question but that a case of holding over may be so doubtful that determination of it may not be made as a matter of law, as where the tenant has left upon the premises fixtures and small articles of little value which he intends to abandon, or where the removal of the property has been practically accomplished."

The court referred, as illustrations, to Rohrbach v. Crossett, 19 N. Y. Supp. 450; [1] McCabe v. Evers (City Ct. N. Y.) 9 N. Y. Supp. 541; Manly v. Clemmens (City Ct. N. Y.) 14 N. Y. Supp. 366. In Myers v. Beakes Dairy Co., 132 App. Div. 710, 714, 117 N. Y. Supp. 569, 572, Ingraham, J., writing for the

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 64 Hun, 637.

majority of the court, says: "The burden was upon the plaintiff to establish the fact that the tenant did remain in possession, and such possession must be a continuance of the possession acquired under the lease. It is quite evident that neither the defendant nor the Salvation Army intended to retain possession of the premises, and the only thing from which possession is sought to be proved is the fact that some property of the subtenant remained on the premises after the termination of the lease. I do not think that this is holding possession within the lease so as to entitle the landlord to hold the tenant."

Tested by this language, the defendant in this case did not hold over. It may be, as argued by the learned counsel for the plaintiff, that the Beakes Dairy Case works an innovation in the law; but, even admitting this to be correct. the court is bound thereby. It may also be true, as claimed by the plaintiff, that the Appellate Division based its reversal of the judgment in the Beakes Dairy Case not upon the facts as determined by the trial court and affirmed by the Appellate Term, but upon its own understanding of the facts in opposition to the finding of the trial court; but even the facts found by the Appellate Division in the Beakes Dairy Case reveal more incidents tending to show continued possession of the tenant than in this case. The tendency of late years is evidently to apply a more elastic rule and deprive the landlord of his option to hold the tenant for another year's lease unless a continuation of the tenant's possession within the terms of the expired lease can be fairly implied. In the late case of Magner v. Barrett, 139 App. Div. 172, 123 N. Y. Supp. 690, Woodward, J., writing for the court says: "Neither the fact that some items of personal property were left upon the premises nor that the key was not delivered to the plaintiff is conclusive evidence of a hold over." Construing the facts in the light most favorable to the plaintiffs, there were some items of personal property left upon the premises, and the keys were not delivered to the defendant. I am of the opinion that the question of the holding over in this case is to be determined as one of fact, and I find that it must be answered in the negative.

[3] There is another compelling reason for denying the plaintiffs the relief demanded. Assuming that the defendant could have been held as a hold over, it nowhere appears that the plaintiffs exercised their option to do so. It admits of no doubt that, unless the undisputed evidence clearly shows such an option, the fact whether the landlord exercised his option or took possession in his own right is always a question of fact to be determined by the court or jury, as the case may be. Haynes v. Aldrich, supra.

[4] This case is barren of any evidence that the plaintiffs did take advantage of their right, assuming that they had such right, to treat the defendant as a lessee for another year. There was some rather vague testimony on the part of Mr. Ernst that he wrote to the defendant on the 1st or 2d of February demanding the rent (S. M. p. 48). His reason for doing so is not quite apparent, unless we are satisfied with his version that it was done because the rent was due on the 1st of the month. This is the only indication until the service of the summons and complaint in this action of any intention of claiming a lease for the ensuing year. On the other hand, the conclusion is irresistible that on February 6th the plaintiffs re-entered the premises (S. M. p. 77), and, if that be the case, such resumption of possession is inconsistent with a subsisting relationship of landlord and tenant. I have been unable to find a case determining what is necessary to show the exercise on the part of the landlord of his option to hold a tenant; but the case of Condon v. Barr, 47 N. J. Law, 113, 54 Am. Rep. 121, holds (quoting from the headnote): "A demand for rent by a landlord upon a tenant holding over is not conclusive evidence of consent such as converts a holding at sufferance into a tenancy from year to year."

In the view that I take of the facts in this case and the law applicable thereto, there must be judgment for the defendant.

Argued before SEABURY, GUY, and BIJUR, JJ.

Ernst, Lowenstein & Cane, for appellants.

L. J. Obermeier, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Spiegelberg in the court below.